IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



ANDRE GORDON,

    Plaintiff,

v.                              Action No. 4:08cv124

PETE'S AUTO SERVICE OF DENBIGH, INC.,

    Defendant.

## OPINION AND ORDER

This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Before the Court are cross-motions for summary judgment.

The plaintiff, Andre Gordon, filed a motion for summary judgment and a brief in support on June 20, 2011. ECF Nos. 68, 69. The defendant, Pete's Auto Service of Denbigh, Inc. ("Pete's Auto Service"), filed a brief in opposition to the plaintiff's motion on July 22, 2011. ECF No. 76. Gordon filed a reply brief on July 27, 2011. ECF No. 80.

Pete's Auto Service filed its own motion for summary judgment and a brief in support on October 11, 2011. ECF Nos. 105, 106. Gordon filed a brief in opposition to the defendant's motion on

October 13, 2011. ECF No. 107. Pete's Auto Service filed a rebuttal brief on October 14, 2011. ECF No. 108.

A hearing on both motions was held on November 2, 2011. Rebecca S. Colaw, Esq., appeared on behalf of the plaintiff. Richard H. Roston, Esq., appeared on behalf of the defendant. The official court reporter was Tami Tichenor.

On November 4, 2011, the Court issued a Rule 56(e)(1) Order, directing the plaintiff to file a supplemental brief and supporting documents in opposition to the defendant's motion for summary judgment. ECF No. 112. The plaintiff filed his supplemental brief with supporting documents on November 21, 2011. ECF No. 120. The defendant filed a brief in response on November 22, 2011. ECF No. 123.

## I. BACKGROUND

In this action, Gordon seeks to recover damages from Pete's Auto Service for the loss of his automobile, a 2002 Jeep Grand Cherokee, which the defendant towed and sold while the plaintiff, an enlisted member of the United States Navy, was deployed. Gordon asserts a federal claim against Pete's Auto Service for violation of Section 307(a) of the Servicemembers Civil Relief Act ("SCRA"), 50 app. U.S.C. § 537(a), and a state law claim for conversion.

In January 2007, Gordon received orders from the United States Navy directing him to report to Norfolk, Virginia, to serve aboard a Norfolk-based warship. On March 16, 2007, he and his wife signed

a lease at an apartment complex in nearby Newport News, where Gordon explained that he was subject to deployment and that during his deployments his wife would return to their prior residence in Jacksonville, Florida. On the lease, Gordon identified his 2002 Jeep Grand Cherokee and provided emergency contact information for his wife.

Gordon's ship was subsequently deployed in late March 2007, at which time his wife returned to their home in Florida. While he was away on deployment, Gordon left his Jeep in the apartment complex's parking lot. In May 2007, while Gordon was still deployed, a representative of the apartment complex notified Pete's Auto Service that Gordon's Jeep had a flat tire and requested that it be towed. On May 17, 2007, Pete's Auto Service towed the Jeep away and then stored it for 35 days.[1] On June 22, 2007, Pete's Auto Service sold the vehicle to itself at auction in satisfaction of the $1,200 lien it had asserted for towing and storage fees.[2] Pete's Auto Service was the only bidder in attendance. Pete's Auto

---

[1] During this time period, the following towing and storage fees accrued: a $120 towing charge, apparently authorized by city ordinance, $980 in storage charges which accrued at the rate of $28 per day, and a $100 processing charge. See Pl.'s Ex. 33, ECF No. 120 attach. 34, at 7. The plaintiff contests the validity of the specific amounts charged, but it is undisputed that Pete's Auto asserted and then enforced a $1,200 lien against the vehicle for these towing and storage fees.

[2] In doing so, Pete's Auto followed certain procedures for the enforcement of storage liens, as established by state law. See Va. Code § 43-34. The plaintiff argues that Pete's Auto did not fully comply with these state law procedural requirements, nor with the requirements of the SCRA.

Service had the vehicle re-titled in its own name and then sold the Jeep to a third party for $4,500 on June 25, 2007. Neither Pete's Auto Service nor the apartment complex contacted Gordon or his wife, nor did Pete's Auto Service obtain a court order before enforcing its lien on the vehicle.

On December 17, 2008, Gordon filed the complaint in this case. In addition to Pete's Auto Service, the complaint named the apartment management company and three related companies as defendants. The four apartment management defendants were subsequently dismissed from the case pursuant to Rule 41 of the Federal Rules of Civil Procedure, leaving only Pete's Auto Service as a defendant.

On November 17, 2009, the Court dismissed the remainder of the case sua sponte, finding that the SCRA did not provide for a private right of action to recover damages at law. See generally Gordon v. Pete's Auto Serv. of Denbigh, Inc., 670 F. Supp. 2d 453 (E.D. Va. 2009). Gordon appealed.

On October 13, 2010, the Veterans' Benefits Act of 2010 was signed into law, amending the SCRA to expressly permit a private right of action for monetary damages, and to allow prevailing plaintiffs to recover litigation costs, including reasonable attorney's fees. See SCRA § 802, Pub. L. No. 111-275, 124 Stat. 2864, 2878 (codified at 50 U.S.C. app. § 597a); Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 457 (4th Cir. 2011). On

February 14, 2011, the Fourth Circuit reversed and remanded this case, finding that the amended statute applied retroactively with respect to compensatory and punitive damages. See id. at 461. The Fourth Circuit declined to consider whether the attorney's fees provision applied retroactively. See id.

The case now approaches the eve of trial. The defendant has conceded liability with respect to the plaintiff's SCRA claim, but contests liability with respect to his state law conversion claim. The defendant further contests the amount of compensatory damages due to the plaintiff under either theory of recovery, the availability and amount of any award of punitive damages, and the availability of an attorney's fees award for violation of the SCRA.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant. Terry's

Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251-52.

When confronted with cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1977)). The mere fact that both sides have moved for summary judgment does not establish that no genuine dispute of material fact exists, thus requiring that judgment be granted to one side or the other. See Worldwide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965). Even if the basic facts are not in

dispute, the parties may nevertheless disagree as to the inferences that reasonably may be drawn from them, in which case summary judgment may be inappropriate, necessitating the denial of both motions. See Am. Fid. & Cas. Co., 354 F.2d at 216.

### III. ANALYSIS

#### A. Liability Under the Servicemembers Civil Relief Act

In Count IV of his complaint, Gordon asserts a federal claim for damages against the defendant, alleging a violation of Section 307(a) of the SCRA, which provides that

> A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement.

50 app. U.S.C. § 537(a)(1). Section 802(a) of the SCRA, enacted in October 2010, authorizes a private right of action to recover monetary damages for any violation of the SCRA. 50 app. U.S.C. § 597a(a). As noted above, the Fourth Circuit has previously held in this case that Section 802(a) applies retroactively to allow this plaintiff to assert a claim for damages. Gordon, 637 F.3d at 459-61. Gordon now moves for summary judgment with respect to Count IV.

It is undisputed that Gordon is, and was at all relevant times, an active duty military servicemember. It is undisputed that Pete's Auto Service enforced its lien against Gordon's vehicle

without first obtaining a court order. Moreover, Section 307 is a strict liability statute; it does not require proof of any mens rea to establish civil liability. See United States v. B.C. Enters., Inc., 667 F. Supp. 2d 650, 662-64 (E.D. Va. 2009).

Fully cognizant of this, the defendant expressly concedes liability—but not damages—with respect to the SCRA violation. Def.'s Br. in Opp'n 5, ECF No. 76. Accordingly, the Court will grant summary judgment to the plaintiff with respect to liability under Count IV of the complaint, which alleges a violation of Section 307(a) of the SCRA, 50 app. U.S.C. § 537(a). A determination as to monetary damages, if any, is reserved for jury trial.

## B. Liability for Conversion

In Count III of his complaint, Gordon asserts a state law claim for damages against the defendant, alleging the common law tort of conversion.

> To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession.

Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359, 365 (Va. 1956)). "The mental state required for conversion is purely and simply a specific intent to appropriate

the property. Knowledge that the property belongs to another, or that the appropriation is unauthorized by the owner, is not necessary." United States v. Stockton, 788 F.2d 210, 216 (4th Cir. 1986). "[O]ne may be held liable in conversion even though he reasonably supposed that he had a legal right to the property in question." Morissette v. United States, 342 U.S. 246, 270 n.31 (1952). Neither party moves for summary judgment with respect to the defendant's liability for conversion, but based upon its review of the record, it appears to the Court that summary judgment as to the defendant's liability for conversion is appropriate.[3]

Gordon's ownership of the vehicle at the time of the alleged conversion is undisputed. It is further undisputed that, in transferring title to the vehicle to itself, and then subsequently to a third party, Pete's Auto Service exercised dominion or control over Gordon's property, thus depriving Gordon of possession. Pete's Auto Service suggests, however, that its actions were not wrongful because it strictly complied with the procedural requirements of Virginia Code § 43-34 in enforcing its storage lien against Gordon's Jeep.

---

[3] The plaintiff's motion for summary judgment is expressly limited to Count IV, alleging violation of the SCRA. See Pl.'s Mot. for Summ. J., ECF No. 68. The defendant's motion seeks summary judgment on Count III, alleging conversion, solely on the absence of any admissible evidence to establish damages; the defendant has expressly declined to request summary judgment on the issue of liability for conversion. See Def.'s Br. in Supp. 5-7, ECF No. 106; Def.'s Rebuttal Br. 6, ECF No. 108. The Court addresses the damages issues separately below.

The plaintiff disputes whether Pete's Auto Service strictly complied with the requirements of Va. Code § 43-34, but this issue is not material to the defendant's liability for conversion. Even assuming that Pete's Auto Service complied fully with the procedures established by state law, it most certainly failed to comply with Section 307(a) of the SCRA, which required Pete's Auto Service to obtain a court order before enforcing its lien against Gordon's vehicle. That Pete's Auto Service may have mistakenly believed that it had a legal right to re-title the Jeep is of no moment. See Morissette, 342 U.S. at 270 n.31. Because the defendant had no legal right to take title to the Jeep without first obtaining a court order, its acquisition of the vehicle constitutes the wrongful exercise of dominion or control over the plaintiff's property, depriving the plaintiff of possession.

Accordingly, the Court provides the parties with notice pursuant to Rule 56(f) of the Federal Rules of Civil Procedure of its inclination to grant summary judgment to the plaintiff with respect to the defendant's liability under Count III of the complaint, which asserts a common-law claim for conversion. The parties will be ordered to show cause why summary judgment should not be granted to the plaintiff with respect to the defendant's liability for conversion.

### C. Compensatory Damages

Both parties move for summary judgment with respect to the issue of compensatory damages. The measure of compensatory damages for both Counts III and IV is the same—the value of Gordon's vehicle at the time when Pete's Auto Service transferred title to itself and then a third party.[4] See Gordon, 637 F.3d at 460 (recognizing that compensatory damages for this plaintiff's SCRA and conversion claims are coextensive).

---

[4] The defendant suggests that the measure of damages for the plaintiff's SCRA claim differs from that of his conversion claim, arguing that any damages for the SCRA violation must be determined with reference only to the defendant's failure to obtain a court order prior to enforcement of its lien. Based on this strained construction, the defendant argues that the resultant harm is too speculative to support an award of damages because even if the defendant had petitioned a court for an order allowing the sale of Gordon's vehicle, there would have been "a multitude of possible outcomes," some of which would have resulted in the very same loss. Def.'s Br. in Supp. 7-8, ECF No. 106. But by its terms, Section 307(a) of the SCRA clearly prohibits a lienholder from "foreclos[ing] or enforc[ing] any lien on [the property of a servicemember] without a court order granted before foreclosure or enforcement." 50 app. U.S.C. § 537(a)(1). It is the act of foreclosing or enforcing the lien without first obtaining a court order that triggers liability, not simply the lienholder's failure to seek a court order. Gordon's loss of the vehicle was a consequence of the defendant's wrongful enforcement of its lien, and thus it constitutes a compensable actual injury. See Standard Oil Co. of N.J. v. S. Pac. Co., 268 U.S. 146, 155 ("It is fundamental in the law of damages that the injured party is entitled to compensation for the loss sustained."). Whether the plaintiff can prove damages with the requisite specificity to justify recovery of more than nominal damages is another matter. See generally Town & Country Props., Inc. v. Riggins, 457 S.E.2d 356, 399 (Va. 1995) ("An award of nominal damages is appropriate . . . where, from the nature of the case, some injury has been done but the proof fails to show the amount.").

In his motion for summary judgment, the plaintiff requests an award of compensatory damages in the amount of $33,507 without articulating any factual basis for this figure.[5] The plaintiff having failed to cite to any materials in the record to support his claim to damages, the Court must deny summary judgment to the plaintiff with respect to the requested award of compensatory damages. See Fed. R. Civ. P. 56(c)(1)(A).

In its motion, the defendant argues that it is entitled to summary judgment on both Counts III and IV because Gordon has failed to adduce any admissible evidence upon which the jury may determine the quantum of damages. This argument presupposes the exclusion of the plaintiff's expert witness, Dale Fitzwater, who is expected to testify at trial that Gordon's Jeep was worth as much as $14,300 at the time of conversion. See Expert Report of Dale Fitzwater 3, ECF No. 114. At the time of the filing of the defendant's motion, a motion to exclude Fitzwater's expert testimony was pending, but that motion was subsequently denied. See Order of Nov. 3, 2011, ECF No. 111. There is currently no pending motion in limine, nor any other form of objection, with respect to Fitzwater's expert testimony at trial. The Court further notes that the defendant has proffered the expert testimony

---

[5] This figure appears to represent the original purchase price of the Jeep as a new vehicle when sold in 2002. But the record is clear, and the plaintiff concedes in its response to the defendant's motion for summary judgment, that Gordon purchased the Jeep as a used vehicle in 2005 for $20,000.

of David Breeding, who is expected to testify that he prepared an independent appraisal of the vehicle in June 2007 valuing it at $6,150 at the time of conversion. Moreover, the Court notes that the record contains other competent evidence upon which the jury might base a finding with respect to the value of Gordon's Jeep at the time of conversion—namely, the $1,200 price for which Pete's Auto Service acquired the vehicle at auction and the $4,500 price for which Pete's Auto Service sold the vehicle to a third party three days later.

The Court finds that there is a genuine dispute as to the value of Gordon's vehicle at the time when Pete's Auto Service transferred title to itself and then a third party. Accordingly, the Court must deny summary judgment to both parties with respect to the issue of compensatory damages.

### D. Punitive Damages

Pete's Auto Service moves for summary judgment with respect to punitive damages. Both Counts III and IV of the complaint request an award of punitive damages.

As previously recognized by the Fourth Circuit in this case, punitive damages for conversion are available "when the defendant's conduct was 'willful and wanton.'" Gordon, 637 F.3d at 460 (quoting PGI, Inc. v. Rathe Prods., Inc., 576 S.E.2d 438, 444 (Va. 2003)). Punitive damages are likewise available for willful and wanton violation of the SCRA. Id. (recognizing that punitive

damages for this plaintiff's SCRA and conversion claims are coextensive).

The key fact at issue with respect to punitive damages under the SCRA is whether Pete's Auto Service knew that the Gordon's Jeep belonged to a servicemember when it put the vehicle up for auction, purchased the vehicle on its own account, and then sold the vehicle to a third party. Certain evidence of record, viewed in the light most favorable to the nonmovant, suggests that the defendant was aware of the SCRA's requirement that a lienholder first obtain a court order before enforcing any lien against a servicemember's property. See Pl.'s Ex. 29, ECF No. 120 attach. 30. Moreover, Pete's Auto Service is "presumptively charged with knowledge of the law." Atkins v. Parker, 472 U.S. 115, 130 (1985).

The defendant argues that punitive damages for violation of the SCRA are unavailable in this case as a matter of law. In support, it points to an affidavit by Lynne Walker, owner and operator of Pete's Auto Service, and the transcript of her deposition. In her affidavit and deposition testimony, Walker states that, when she inspected the Jeep prior its auction, she found no decal, sticker, marker, or any other indication that the vehicle was owned by a servicemember. The defendant argues that Walker's affidavit and deposition testimony are unrebuttted, and because she did not see anything to identify Gordon's Jeep as

belonging to a servicemember, Pete's Auto Service could not have willfully or wantonly violated Section 307(a) of the SCRA.

The plaintiff asserts that the vehicle did in fact bear a military base vehicle pass decal which should have placed Pete's Auto Service on notice that the vehicle belonged to a servicemember. The plaintiff further notes that the vehicle contained his personal effects, including military uniform items and papers clearly identifying the owner of the vehicle as a military servicemember.[6] While the plaintiff is in no position to provide direct evidence that Walker in fact observed a vehicle pass decal on the vehicle, nor that the decal was still present on the vehicle on the date when Pete's Auto Service towed it from the apartment complex, Gordon submits documentary evidence to suggest that a military base vehicle pass decal had been issued for his Jeep. See Pl.'s Ex. 31, ECF No. 120 attach. 32. Moreover, Gordon's sworn answers to interrogatories indicate that he will testify at trial, based on his own personal knowledge, that the vehicle bore a military base vehicle pass decal when he left it in the apartment complex parking lot upon his deployment in March 2007. See Pl.'s Ex. 42, ECF No. 120 attach. 43, at 7. The evidence proffered by Gordon on summary judgment is sufficient for

---

[6] These items were apparently recovered from the vehicle by the third-party purchaser, who ultimately returned them to the plaintiff. According to Walker, neither she nor any of her employees ever inspected the contents of the vehicle.

- 15 -

a reasonable jury to infer that the decal was still present when towed by Pete's Auto Service.

The defendant further argues that punitive damages for conversion are unavailable in this case as a matter of law. The defendant argues that it "at all times acted according to Virginia law," insofar as it complied with the procedural requirements of Virginia Code § 43-34. But as noted above with respect to the question of the defendant's liability for conversion, whether Pete's Auto Service strictly complied with Virginia law is immaterial because it clearly failed to comply with the requirements of federal law. Moreover, the plaintiff argues that the defendant acted willfully and wantonly in any event, securing a fraudulent appraisal valuing the vehicle at less than $7,500 so as to avoid a state law requirement for a court order prior to selling the vehicle in satisfaction of a lien. See generally Va. Code § 43-34. The plaintiff has proffered documentary evidence and the expert testimony of Dale Fitzwater on this issue.

The Court finds that there is a genuine dispute as to whether the actions of Pete's Auto Service giving rise to its liability for conversion and for violation of the SCRA were willful and wanton. Accordingly, the Court must deny summary judgment to the defendant with respect to the issue of punitive damages.

### E. Attorney's Fees

The Court reserves ruling on the availability of an attorney's fee award at this time.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. The Court RESERVES ruling with respect to the availability of an attorney's fee award in this case.

2. The defendant's motion for summary judgment (ECF No. 105) is DENIED, except with respect to the availability of an attorney's fee award in this case.

3. The plaintiff's motion for summary judgment (ECF No. 68) is GRANTED in part and DENIED in part; the motion is GRANTED with respect to the defendant's liability for violation of Section 307(a) of the Servicemembers Civil Relief Act and otherwise DENIED, except with respect to the availability of an attorney's fee award in this case.

4. The Clerk is DIRECTED to enter judgment for the plaintiff with respect to the defendant's liability under Count IV of the complaint, which alleges a violation of Section 307(a) of the Servicemembers Civil Relief Act. A determination as to monetary damages, if any, shall be reserved for jury trial.

5. Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the parties are ORDERED to SHOW CAUSE why summary judgment should not be granted to the plaintiff with respect to the

defendant's liability under Count III of the complaint, which asserts a common-law claim for conversion. The parties may submit written briefs with respect to this issue, not to exceed ten pages in length, within 7 days of the date of this Order.

IT IS SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 2, 2011