**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

FILED

MAR 1 2 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ANDRE GORDON,

      Plaintiff,

v.                                  Action No. 4:08cv124

PETE'S AUTO SERVICE OF DENBIGH, INC.,

      Defendant.

## OPINION AND ORDER

      This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Before the Court are cross-motions for summary judgment.

## I. BACKGROUND

      In this action, Gordon seeks to recover damages from Pete's Auto Service for the loss of his automobile, a 2002 Jeep Grand Cherokee, which the defendant towed and sold while the plaintiff, an enlisted member of the United States Navy, was deployed. Gordon asserts a federal claim against Pete's Auto Service for violation of Section 307(a) of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 537(a), and a state law claim for conversion.

      In January 2007, Gordon received orders from the United States Navy directing him to report to Norfolk, Virginia, to serve aboard a Norfolk-based warship. On March 16, 2007, he and his wife signed

a lease at an apartment complex in nearby Newport News, where Gordon explained that he was subject to deployment and that during his deployments his wife would return to their prior residence in Jacksonville, Florida.  On the lease, Gordon identified his 2002 Jeep Grand Cherokee and provided emergency contact information for his wife.

Gordon's ship was subsequently deployed in late March 2007, at which time his wife returned to their home in Florida.  While he was away on deployment, Gordon left his Jeep in the apartment complex's parking lot.  In May 2007, while Gordon was still deployed, a representative of the apartment complex notified Pete's Auto Service that Gordon's Jeep had a flat tire and requested that it be towed.  On May 17, 2007, Pete's Auto Service towed the Jeep away and then stored it for 35 days.  On June 22, 2007, Pete's Auto Service sold the vehicle to itself at auction in satisfaction of the $1,200 lien it had asserted for towing and storage fees.  Pete's Auto Service was the only bidder in attendance.  Pete's Auto Service had the vehicle re-titled in its own name and then sold the Jeep to a third party for $4,500 on June 25, 2007.  Neither Pete's Auto Service nor the apartment complex contacted Gordon or his wife, nor did Pete's Auto Service obtain a court order before enforcing its lien on the vehicle.

On December 17, 2008, Gordon filed the complaint in this case.  In addition to Pete's Auto Service, the complaint named the

apartment management company and three related companies as defendants.   The four apartment management defendants were subsequently dismissed from the case pursuant to Rule 41 of the Federal Rules of Civil Procedure, leaving only Pete's Auto Service as a defendant.

On November 17, 2009, the Court dismissed the remainder of the case sua sponte, finding that the SCRA did not provide for a private right of action to recover damages at law.   See generally Gordon v. Pete's Auto Serv. of Denbigh, Inc., 670 F. Supp. 2d 453 (E.D. Va. 2009).   Gordon appealed.

On October 13, 2010, the Veterans' Benefits Act of 2010 was signed into law, amending the SCRA to expressly permit a private right of action for monetary damages, and to allow prevailing plaintiffs to recover litigation costs, including reasonable attorney's fees.   See SCRA § 802, Pub. L. No. 111-275, 124 Stat. 2864, 2878 (codified at 50 U.S.C. app. § 597a); Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 457 (4th Cir. 2011).   On February 14, 2011, the Fourth Circuit reversed and remanded this case, finding that the amended statute was not impermissibly retroactive with respect to compensatory and punitive damages.   See id. at 461.   The Fourth Circuit declined to consider the availability of attorney's fees under the new statute.   See id.

On remand, the parties consented to proceed before a magistrate judge, and the case was reassigned to the undersigned

- 3 -

pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  On June 20, 2011, the plaintiff filed a motion for summary judgment.  On October 11, 2011, the defendant filed its own motion for summary judgment.  On November 2, 2011, the Court held a hearing on these cross-motions for summary judgment.  Rebecca S. Colaw, Esq., appeared on behalf of the plaintiff.  Richard H. Roston, Esq., appeared on behalf of the defendant.  The official court reporter was Tami Tichenor.

On December 2, 2011, the Court issued an Opinion and Order denying the defendant's motion for summary judgment and granting in part and denying in part the plaintiff's motion for summary judgment.  Gordon v. Pete's Auto Serv. of Denbigh, Inc., No. 4:08cv124, 2011 WL 6024538 (E.D. Va. Dec. 2, 2011).  In that Opinion and Order, the Court expressly reserved ruling with respect to the availability of an attorney's fee award in this case.  Id. at *7.  The Court granted the plaintiff's motion with respect to the defendant's liability for violation of Section 307(a) of the SCRA and otherwise denied both motions.  Id. at *3, *5-*7.  The Court also sua sponte raised the question of the defendant's liability for common-law conversion under Count III of the complaint, directing the parties to show cause why summary judgment should not be granted to the plaintiff on this issue.  Id. at *4, *7.  Neither party has responded with respect to the defendant's liability for common-law conversion.

- 4 -

In this Opinion and Order, the Court returns to the issues of the defendant's liability for conversion and the availability of an attorney's fee award in this case.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251-52.

When confronted with cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1977)). The mere fact that both sides have moved for summary judgment does not establish that no genuine dispute of material fact exists, thus requiring that judgment be granted to one side or the other. See Worldwide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965). Even if the basic facts are not in dispute, the parties may nevertheless disagree as to the inferences that reasonably may be drawn from them, in which case summary judgment may be inappropriate, necessitating the denial of both motions. See Am. Fid. & Cas. Co., 354 F.2d at 216.

### III. ANALYSIS

#### A. Liability for Conversion

In Count III of his complaint, Gordon asserts a state law claim for damages against the defendant, alleging the common law tort of conversion.

- 6 -

> To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession.

Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359, 365 (Va. 1956)). "The mental state required for conversion is purely and simply a specific intent to appropriate the property. Knowledge that the property belongs to another, or that the appropriation is unauthorized by the owner, is not necessary." United States v. Stockton, 788 F.2d 210, 216 (4th Cir. 1986). "[O]ne may be held liable in conversion even though he reasonably supposed that he had a legal right to the property in question." Morissette v. United States, 342 U.S. 246, 270 n.31 (1952).

Gordon's ownership of the vehicle at the time of the alleged conversion is undisputed. It is further undisputed that, in transferring title to the vehicle to itself, and then subsequently to a third party, Pete's Auto Service exercised dominion or control over Gordon's property, thus depriving Gordon of possession. Pete's Auto Service suggests, however, that its actions were not wrongful because it strictly complied with the procedural requirements of Virginia Code § 43-34 in enforcing its storage lien against Gordon's Jeep.

The plaintiff disputes whether Pete's Auto Service strictly complied with the requirements of Va. Code § 43-34, but this issue is not material to the defendant's liability for conversion. Even assuming that Pete's Auto Service complied fully with the procedures established by state law, it most certainly failed to comply with Section 307(a) of the SCRA, which required Pete's Auto Service to obtain a court order before enforcing its lien against Gordon's vehicle. That Pete's Auto Service may have mistakenly believed that it had a legal right to re-title the Jeep is of no moment. See Morissette, 342 U.S. at 270 n.31. Because the defendant had no legal right to take title to the Jeep without first obtaining a court order, its acquisition of the vehicle constitutes the wrongful exercise of dominion or control over the plaintiff's property, depriving the plaintiff of possession.

Accordingly, the Court will grant summary judgment to the plaintiff with respect to the defendant's liability under Count III of the complaint, which asserts a common-law claim for conversion.

### B. Attorney's Fees Under Section 802(b) of the SCRA

In its February 2011 decision, the Fourth Circuit declined to address the question of whether the October 2010 enactment of Section 802(b) of the SCRA created an impermissibly retroactive effect as applied to this case.[1] Gordon, 637 F.3d at 461. The

---

[1] Section 802(b) provides that: "The court may award to a person aggrieved by a violation of [the SCRA] who prevails in an

Fourth Circuit reasoned that no party had yet prevailed with respect to the plaintiff's Section 802(a) claim.  Id.

In its December 2011 decision, this Court granted summary judgment to the plaintiff with respect to the defendant's liability under Count IV of the complaint, which sought monetary damages incurred as a result of the defendant's violation of Section 307(a) of the SCRA.  Gordon, 2011 WL 6024538, at *3.  Although the scope and amount of the damages award has been reserved for a jury trial, the defendant's liability for violation of the SCRA and the plaintiff's entitlement to nominal damages, at a minimum, has been resolved, firmly establishing the plaintiff as a prevailing party under the SCRA.  See id. at *5 & n.4.  The question of whether Section 802(b) is impermissibly retroactive is now ripe.

As the Fourth Circuit has previously noted in this case, "[r]etroactivity is not favored in the law."  Gordon, 637 F.3d at 458 (quoting Bowen v. Georgetown Hosp., 488 U.S. 204, 208 (1988)). "This maxim is reflected in a presumption against statutory retroactivity" which "instructs courts not to apply a statute to conduct that took place before the statute went into effect."  Id.

> To determine whether this presumption prevents intervening statutes from applying in any given case, a three-step analysis is appropriate.  First, a court must ask "whether Congress has expressly prescribed the statute's proper reach."  If Congress has clearly stated that the statute should

action brought under [SCRA § 802(a)] the costs of the action, including a reasonable attorney fee."  50 U.S.C. app. § 597a(b).

> be applied retroactively, then "there is no need to resort to judicial default rules."
>
> If "the statute contains no such express command," however, then a court proceeds to the second step and asks "whether the new statute would have retroactive effect" as applied to the particular case. If not, then the presumption against retroactivity is not triggered, and the court must "give effect to Congress's latest enactment . . . ." If the new statute would operate retroactively, then the statute must be construed not to apply to pre-enactment conduct unless, in the third step of the analysis, there is "clear congressional intent favoring such a result."

Id. (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994), and Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 227 (1995)) (citations omitted).

The Fourth Circuit has already considered the first step, whether Congress has expressly prescribed the proper reach of Section 802, concluding that "Congress has neither expressly included nor excluded pre-enactment conduct from the reach of this statute."[2]  Id. at 459.

---

[2] The Court notes that the United States Department of Justice recently proposed an amendment to Section 802 that would make the statute expressly retroactive, but Congress has taken no action on the proposal as yet.  See Letters from Ronald Weich, Assistant Att'y Gen., U.S. Dep't of Justice Office of Legislative Affairs, to Hon. Joseph R. Biden, Jr., President of the U.S. Senate, and Hon. John A. Boehner, Speaker of the U.S. House of Reps. (Sept. 20, 2011) (enclosure at 4) (proposing the addition of § 802(c), providing that "[t]his section applies to any violation of this Act occurring on, before, or after October 13, 2010"), http://www.justice.gov/crt/spec_topics/military/document/letterslegprop.pdf.

The Fourth Circuit considered the second step of this analysis only with respect to Section 802(a). Thus, this Court considers, as a matter of first impression, whether applying Section 802(b) to the plaintiff's claim for attorney's fees would have retroactive effect. As the Fourth Circuit has previously observed in this case:

> A statute does not have retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment." Rather, a statute operates retroactively when it "attaches new legal consequences to events completed before its enactment," for example by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed."

Id. (quoting Landgraf, 511 U.S. at 269, 270, 280).

### 1. **Attorney's Fees for Post-Enactment Legal Services**

Preliminarily, the Court notes that the pertinent event, conduct, or transaction at issue here is the performance of legal services by plaintiff's counsel. See Martin v. Hadix, 527 U.S. 343, 361-62 (1999) (distinguishing attorney's fees incurred for legal services before and after enactment of statute); Landgraf, 511 U.S. at 275 (noting that the application of rules that "regulate secondary rather than primary conduct . . . giving rise to the suit" is not retroactive); id. at 277 ("Attorney's fee determinations . . . are 'collateral to the main cause of action' and 'uniquely separable from the cause of action to be proved at

trial.'") (quoting White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 451-52 (1982)); Hutto v. Finney, 437 U.S. 678, 695 n.24 (1978) ("Unlike ordinary 'retroactive' relief such as damages or restitution, an award of costs does not compensate the plaintiff for the injury that first brought him into court. Instead, the award reimburses him for a portion of the expenses he incurred in seeking prospective relief. . . . [T]he power to assess costs is an important and well-recognized tool used to restrain the behavior of parties during litigation."). An award to the plaintiff of attorney's fees with respect to legal services performed after October 13, 2010, is clearly not retroactive. See Martin, 527 U.S. at 361-62; see also Landgraf, 511 U.S. at 273 ("When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."). This has long been the rule in this Circuit. See Thompson v. Sch. Bd. of Newport News, 472 F.2d 177, 178 (4th Cir. 1972) (en banc) (per curiam), overruled on other grounds by Bradley v. Sch. Bd. of Richmond, 416 U.S. 696 (1974). Accordingly, the Court will grant summary judgment to the plaintiff with respect to the defendant's liability for reasonable attorney's fees incurred by the plaintiff for legal services performed after the enactment of Section 802(b) on October 13, 2010.

## 2. <u>Attorney's Fees for Pre-Enactment Legal Services</u>

Whether the prevailing plaintiff may be awarded reasonable attorney's fees with respect to legal services performed before the October 2010 enactment of Section 802(b) is a closer question.

In <u>Landgraf v. USI Film Products</u>, 512 U.S. 244 (1994), the Supreme Court of the United States considered a new statute authorizing the recovery of compensatory and punitive damage awards in sexual harassment cases brought under Title VII of the Civil Rights Act of 1964. Adopting the three-step analysis set forth above, the Supreme Court ultimately held that the statute was impermissibly retroactive, as it created a new right to monetary damages for sexual harassment claims where none previously existed. See <u>id.</u> at 280-85. Of course, the Fourth Circuit's application the <u>Landgraf</u> three-step analysis in this case resulted in the opposite result—a finding that Section 802(a) was not impermissibly retroactive with respect to a violation of Section 307(a) of the SCRA because monetary damages were already available under Virginia conversion law. See <u>Gordon</u>, 637 F.3d 454, 460-61.

As noted above, the Fourth Circuit expressly declined to determine whether Section 802(b), providing for the recovery of reasonable attorney's fees by a prevailing party under Section 802(a), was impermissibly retroactive. See <u>id.</u> at 461. But the issue is now ripe, and this Court finds instructive the <u>Landgraf</u> court's extensive discussion of <u>Bradley v. School Board of</u>

Richmond, 416 U.S. 696 (1974), in which the Supreme Court considered a similar statute, Section 718 of the Emergency School Aid Act, authorizing the recovery of reasonable attorney's fees in a school desegregation case brought under the Civil Rights Act of 1871.

In Landgraf, the Supreme Court summarized its earlier decision in Bradley:

> The Court of Appeals [in Bradley] held that the new fee provision did not authorize the award of fees for services rendered before the effective date of the amendments. This Court reversed. We concluded that the private parties could rely on § 718 to support their claim for attorney's fees, resting our decision "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

Landgraf, 511 U.S. at 277 (quoting Bradley, 416 U.S. at 711). The Supreme Court then clarified that:

> Although that language suggests a categorical presumption in favor of application of all new rules of law, . . . Bradley did not alter the well-settled presumption against application of the class of new statutes that would have genuinely "retroactive" effect. . . . [T]he attorney's fee provision at issue in Bradley did not resemble the cases in which we have invoked the presumption against statutory retroactivity. Attorney's fee determinations, we have observed, are "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial." Moreover, even before the enactment of § 718, federal courts had authority . . . to award fees based upon equitable principles. . . . In light of the prior availability of a fee award, and the likelihood that fees would be assessed under

- 14 -

> pre-existing theories, we concluded that the new
> fee statute simply "d[id] not impose an additional
> or unforeseeable obligation" upon the school board.

Landgraf, 511 U.S. at 277-78 (citations omitted) (quoting White v.
N.H. Dep't of Emp't Sec., 455 U.S. 445, 451-52 (1982), and Bradley,
416 U.S. at 721).

In distinguishing Bradley from the facts presented in
Landgraf, the Supreme Court identified two material differences
between the attorney's fees award at issue in Bradley and the
damages award at issue in Landgraf: (1) the attorney's fees issue
was "collateral" and "uniquely separable" from the primary cause of
action; and (2) even before the statute was enacted, the federal
courts had authority to award attorney's fees. See id. Both
factors are also present in this case.[3]

---

[3] The Court pauses to note a third similarity between this
case and Bradley, not enumerated by the Landgraf court, but which
the Court nonetheless finds persuasive. In Bradley, the
plaintiff's desegregation lawsuit "vindicated a national policy of
high priority." Bradley, 416 U.S. at 719 n.27. This case
similarly involves a national policy of high priority. "It is
'obvious and unarguable' that no governmental interest is more
compelling than the security of the Nation." Haig v. Agee, 453
U.S. 280, 307 (1981) (quoting Aptheker v. Sec'y of State, 378 U.S.
500, 509 (1964)). The SCRA is an exercise of congressional powers
over the national defense. See Dameron v. Brodhead, 345 U.S. 322,
325 (1953) (finding the SCRA's predecessor statute to be the
congressional exercise of a "necessary and proper" supplementary
power to its constitutional power to raise and support armies and
to declare war); Wissner v. Wissner, 338 U.S. 655, 660-61 (1950)
(noting that enhancing "the morale of servicemen" is a legitimate
end "within the congressional powers over the national defense").
For this reason, "[t]he [SCRA] is always to be liberally construed
to protect those who have been obliged to drop their own affairs to

The Supreme Court has repeatedly recognized that "[a]ttorney's fee determinations . . . are 'collateral to the main cause of action' and 'uniquely separable from the cause of action to be proved at trial.'" See id. at 277 (quoting White, 455 U.S. at 451-52); see also Hutto, 437 U.S. at 695 n.23 (recognizing the "general practice" of awarding attorney's fees under a statute passed after services had been rendered but while the case was still pending), cited in Landgraf, 511 U.S. at 279 n.33; Bradley, 416 U.S. at 721 (noting that a statute permitting recovery of attorney's fees effected "no change in the substantive obligation of the parties"); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170 (1939) (finding a petition for reimbursement of attorney's fees to be "an independent proceeding supplemental to the original proceeding"); cf. New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 66 (1980) (permitting a standalone federal lawsuit for attorney's fees incurred in connection with state and local proceedings under Title VII of the Civil Rights Act of 1964). An award of reasonable attorney's fees to the plaintiff in this case is similarly collateral to his underlying, and successful, claim for monetary damages under Section 802(a) of the SCRA.

Moreover, even before Section 802(b) was enacted on October 13, 2010, this Court had authority to award attorney's fees to a

---

take up the burdens of the nation." Boone v. Lightner, 319 U.S. 561, 575 (1943).

prevailing plaintiff under the SCRA. For one, where a private right of action is judicially implied, the Supreme Court has recognized that the court has "a measure of latitude to shape a sensible remedial scheme that best comports with the statute." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 284 (1998). Thus, prior to the enactment of Section 802(b), a federal court finding an implied private right of action under the SCRA already had "great latitude in awarding damages, including attorney's fees, especially considering the purposes of SCRA." Clauer v. Heritage Lakes Homeowners Ass'n, No. 4:09-cv-560, 2010 WL 2465363, at *4 (E.D. Tex. June 3, 2010) (magistrate judge's report and recommendation), adopted, 2010 WL 2465240 (E.D. Tex. June 16, 2010); see also Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 66 (1992) (noting that, in implying a private right of action, federal courts "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise").

In its November 2009 decision, this Court held that the pre-amendment SCRA did not include an implied private right of action for damages.[4] Gordon, 670 F. Supp. 2d at 455-56 (citing Davidson v. Gen. Fin. Corp., 295 F. Supp. 878, 881 (N.D. Ga. 1968)). Although that decision was reversed by the Fourth Circuit on

---

[4] It should also be noted that this Court nevertheless expressly recognized an implied private right of action for equitable relief under the pre-amendment SCRA. See Gordon, 670 F. Supp. 2d at 455 n.4.

- 17 -

appeal, the reversal was based entirely on the newly amended statute. See Gordon, 637 F.3d at 457-61. The Fourth Circuit did not decide whether an implied right of action for damages existed under the pre-enactment SCRA, simply assuming arguendo that it did not. See id. at 459 n.1.

This Court's November 2009 ruling, however, is not dispositive in any event. Prior to the October 2010 enactment of Section 802, most federal courts examining whether particular provisions of the SCRA provided an implied private right of action had concluded that they did. Compare Clauer, 2010 WL 2465363, at *4 (finding an implied private right of action under SCRA § 501, 50 U.S.C. app. § 561); Frazier v. HSBC Mortg. Servs., Inc., No. 8:08-cv-02396-T-24, 2009 WL 4015574, at *4-*5 (M.D. Fla. Nov. 19, 2009) (finding implied private right of action under SCRA § 207, 50 U.S.C. app. § 527); Hurley v. Deutsche Bank Trust Co., No. 1:08-CV-361, 2009 WL 701006, at *4 (W.D. Mich. Mar. 13, 2009) (finding implied private right of action under SCRA § 207, 50 U.S.C. app. § 527); Linscott v. Vector Aerospace, No. CV-05-682-HU, 2006 WL 240529, at *5-*7 (D. Or. Jan. 31, 2006) (finding implied private right of action under SCRA § 307, 50 U.S.C. app. § 537); Cathey v. First Republic Bank, No. 00-2001-M, 2001 U.S. Dist. LEXIS 13150, at *17-*19 (W.D. La. July 6, 2001) (magistrate judge's report and recommendation)

(finding implied private right of action under SSCRA[5] precursor to SCRA § 207, 50 U.S.C. app. § 527), adopted, 2001 U.S. Dist. 13195 (W.D. La. Aug. 13, 2001); Marin v. Armstrong, No. 3:97-CV-2784-D, 1998 WL 1765716, at *3 (N.D. Tex. Sept. 21, 1998) (finding implied private right of action under SSCRA precursors to SCRA § 108, 50 U.S.C. app. § 518, and SCRA § 302, 50 U.S.C. app. § 532); Moll v. Ford Consumer Fin. Co., No. 97 C 5044, 1998 WL 142411, at *2-*5 (N.D. Ill. Mar. 23, 1998) (finding implied private right of action under SSCRA precursor to SCRA § 207, 50 U.S.C. app. § 527), with McMurtry v. City of Largo, 837 F. Supp. 1155, 1157-58 (M.D. Fla. 1993) (finding no implied private right of action under SSCRA precursors to SCRA § 202, 50 U.S.C. app. § 522, and SCRA § 206, 50 U.S.C. app. § 526);[6] Huffstetler v. Davis, 309 F. Supp. 1372, 1374 (N.D. Ga. 1970) (finding no implied private right of action under SSCRA precursor to SCRA § 301, 50 U.S.C. app. § 531); Davidson, 295 F. Supp. at 881 (finding no implied private right of action under

---

[5] On December 19, 2003, the Servicemembers Civil Relief Act was revised and renamed. It previously had been known as the Soldiers' and Sailors' Civil Relief Act of 1940 ("SSCRA"). The revision included renumbering of certain existing sections of the Act. See generally Servicemembers Civil Relief Act, ch. 888, 54 Stat. 1178 (1940), as amended by Pub. L. 108-189, 117 Stat. 2835 (2003) (codified as amended at 50 U.S.C. app. §§ 501 et seq.).

[6] It must be noted that the McMurtry decision was subsequently distinguished by the same district court in Frazier, which limited McMurtry's application to the stay and statute of limitations tolling provisions of the SCRA. As noted above, the Frazier court found an implied private right of action under SCRA § 207. See Frazier, 2009 WL 4015574, at *4-*5.

- 19 -

SSCRA precursor to SCRA § 201, 50 U.S.C. app. § 521).[7]  Notably, the only one of these other federal court decisions to address Section 307 of the SCRA, the provision at issue in this case, found that an implied private right of action for damages did exist.  See Linscott, 2006 WL 240529, at *5-*7 (addressing the defendant's enforcement of a mechanic's lien without first obtaining a court order, in violation of SCRA § 307, 50 U.S.C. app. § 537).

Even in the absence of an implied private right of action, this Court had authority to award attorney's fees under equitable principles.  In Sprague v. Ticonic National Bank, 307 U.S. 161 (1939), the Supreme Court addressed "the power of federal courts in equity suits to allow counsel fees and other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute."  Id. at 164.  The Supreme Court noted that "[a]llowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts," including the

---

[7] Two additional federal court decisions finding no implied private right of action under the SCRA were subsequently vacated or reversed on reconsideration.  See Batie v. Subway Real Estate Corp., No. 3:07-CV-1415-M, 2008 WL 413627, at *7 (N.D. Tex. Feb. 15, 2008), vacated on reconsideration, 2008 WL 5136636, at *1 (N.D. Tex. Mar. 12, 2008); Hurley v. Deutsche Bank Trust Co., No. 1:08-CV-361, 2008 WL 4539478, at *6-*7 (W.D. Mich. Sept. 30, 2008), rev'd on reconsideration, 2009 WL 701006, at *4 (W.D. Mich. Mar. 13, 2009).  The Batie court went on to dismiss the case on other grounds, but it should also be noted that the same district court had previously found an implied private right of action under the SSCRA precursors to SCRA §§ 108 and 302.  See Marin, 1998 WL 1765716, at *3.  As noted above, the Hurley court reversed itself, finding an implied private right of action under SCRA § 207.

award of "costs 'as between solicitor and client'" to the extent "fair justice to the other party will permit." Id. at 164-65.  As noted above, this Court expressly recognized an implied private right of action for equitable relief under the pre-amendment SCRA in its November 2009 decision.  See Gordon, 670 F. Supp. 2d at 455 n.4.  In granting equitable relief, federal courts have previously held that an award of attorney's fees is among the equitable remedies available under the SCRA.  See, e.g., Omega Indus., Inc. v. Raffaele, 894 F. Supp. 1425, 1430-31 (D. Nev. 1995).

Thus, whether or not Section 307 of the SCRA contained an implicit private right of action for damages, this Court had authority to award reasonable attorney's fees to a prevailing plaintiff prior to the October 2010 enactment of Section 802(b). The October 2010 enactment of Section 802(b) did nothing to change the substantive obligations of the defendant as they previously existed under the SCRA.  See Bradley, 416 U.S. at 721.  It did not impair any previously existing rights of the defendant, increase the defendant's liability for past conduct, or impose any new duties with respect transactions already completed.  See Gordon, 637 F.3d at 459 (citing Landgraf, 511 U.S. at 280).  "Because attorney's fees were available, albeit under different principles, before passage of the statute, . . . there [is] no manifest injustice in allowing the fee statute to apply in [this] case. . . .  [T]he award of statutory attorney's fees [does] not

upset any reasonable expectations of the parties." See Martin, 527 U.S. at 360 (citing Bradley, 416 U.S. at 720-21) (citations omitted).

Accordingly, the Court finds that the attorney's fees issue in this case is "collateral" and "uniquely separable" from the primary cause of action against the defendant, and that, even before the statute was enacted, this Court had authority to award attorney's fees to the plaintiff if he prevailed on his SCRA claim. See Landgraf, 511 U.S. at 277-78. Moreover, the Court notes that the plaintiff's successful SCRA claim has "vindicated a national policy of high priority." See Bradley, 416 U.S. at 719 n.27. See generally supra note 3. As a result, the Court concludes, as a matter of law, that the application of Section 802(b) of the SCRA, permitting the recovery of reasonable attorney's fees by a prevailing party under Section 802(a), in this action is not impermissibly retroactive.[8]   Therefore, the Court will grant summary judgment to the plaintiff with respect to the defendant's liability for reasonable attorney's fees incurred by the plaintiff for legal services performed before the enactment of Section 802(b) on October 13, 2010.

`

---

[8] Because the Court finds no impermissible retroactive effect, it does not reach the third step of the Landgraf analysis. See Gordon, 637 F.3d at 461 n.2.

- 22 -

### 3. A Subsequent Motion for Attorney's Fees Is Necessary

The Court has determined that the plaintiff, having prevailed pursuant to Section 802(a), is entitled to an award of reasonable attorney's fees. The Court has made no determination with respect to the specific amount of such an award.

Any decision with respect to the specific amount of any attorney's fee award must be reserved until such time as a separate motion for an award of attorney's fees has been filed, together with any affidavits or other documentary evidence necessary to support the motion. See generally Fed. R. Civ. P. 54(d)(2); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243-44 (4th Cir. 2009); In re Outsidewall Tire Litigation, 748 F. Supp. 2d 557, 565-66 & nn.24-26 (E.D. Va. 2010). Having found that application of Section 802(b) of the SCRA to this case is not impermissibly retroactive, the plaintiff's motion may address attorney's fees for legal services rendered from the inception of this lawsuit, including services provided at trial and on appeal. See Virginia Acad. of Clinical Psychologists v. Blue Shield of Virginia, 543 F. Supp. 126, 136 (E.D. Va. 1982) (including appellate legal services in attorney's fee award calculation); Killette v. Pittman, 2001 WL 34085609, at *3 (D.S.C. Mar. 15, 2001) ("[D]istrict courts are ordinarily the preferable forum to determine attorney's fees for services rendered on appeal because of their superior access to

fact-finding procedures.") (quoting Shimman v. Int'l Union of Operating Eng'rs, Local 18, 719 F.2d 879, 880 (6th Cir. 1983)).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. The defendant's motion for summary judgment (ECF No. 105) is DENIED with respect to the previously reserved issue of the plaintiff's entitlement to an attorney's fee award in this case.

2. The plaintiff's motion for summary judgment (ECF No. 68) is GRANTED with respect to the previously reserved issue of the plaintiff's entitlement to an attorney's fee award in this case.

3. The Clerk is DIRECTED to enter judgment for the plaintiff with respect to the defendant's liability under Count III of the complaint, which asserts a common-law claim for conversion. A determination as to monetary damages, if any, shall be reserved for jury trial.

4. The Clerk is DIRECTED to enter judgment for the plaintiff with respect to the defendant's liability for reasonable attorney's fees incurred by the plaintiff in connection with Count IV of the complaint. A determination with respect to the specific amount of any attorney's fee award to the plaintiff shall be reserved until such time as a separate motion for attorney's fees has been filed pursuant to Fed. R. Civ. P. 54(d)(2), together with any affidavits or other documentary evidence necessary to support the motion.

IT IS SO ORDERED.

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 12 , 2012